W. Howes Meade and Laura H. Meade v. Commissioner.
Meade v. Commissioner
Docket No. 85332.
United States Tax Court
T.C. Memo 1965-4; 1965 Tax Ct. Memo LEXIS 328; 24 T.C.M. (CCH) 20; T.C.M. (RIA) 65004; January 14, 1965
W. Howes Meade, pro se, 4600 Connecticut Ave., N. W., Washington, D.C. Erwin L. Stuller, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The Commissioner has determined a deficiency in the petitioners' income tax for the calendar year 1955 in the amount of $6,570.33. Concessions have been made by petitioners and the sole remaining issue is whether petitioners sustained a capital loss of $29,034.25 in 1955, due to certain corporate stock becoming worthless in such year or due to an obligation of such corporation to *329 petitioners becoming worthless in such year. Some of the facts have been stipulated and are so found. The petitioners W. Howes Meade and Laura H. Meade are husband and wife who resided in Lexington, Kentucky, and filed their Federal income tax return for the year in issue with the district director of internal revenue at Lousville, Kentucky. At sometime during 1953 petitioners began the construction of a television antenna system to service Middlesboro, Kentucky, a city of about 15,000 population which received very poor direct VHF television signals because the surrounding terrain was mountainous. Petitioners constructed a television antenna near the top of a neighboring mountain and either planned for or put into place coaxial cables and amplifiers to carry and strengthen the signals so that they could be brought down into the town and offered on a subscription basis to potential users. Husband petitioner testified that in June 1954 the replacement value of the above, which we shall refer to as the antenna system, amounted to a little over $93,000 (on brief petitioners assert a replacement value of $91,776.62) and that on June 4, 1954, petitioners transferred this entire *330 antenna system to Tele-Ception, Inc., in return for all of its stock (except for qualifying shares) and two promissory notes made by the corporation, each payable to petitioner husband and each in the amount of $45,888.31. At about the same time 50 percent of the above stock was sold to Edward Goldberg and some associates of his (hereinafter called Goldberg) $1for. Petitioners thereupon cancelled one of the promissory notes just received from Tele-Ception, Inc., and sold the other note to Goldberg with recourse and apparently at face value. Petitioners also delivered to Goldberg their 50 percent of the stock of Tele-Ception, Inc., as collateral to guarantee payment of the note. The note bore no interest and was payable at the rate of $1,500 per month, commencing on September 4, 1954. Tele-Ception, Inc., was formed, a Kentucky corporation, on January 2, 1952, by petitioners and had a fiscal year beginning on September 1 and ending on August 31. It had been held in an inactive state until the transfer to it of the antenna system described above. It filed a Federal income tax return form for its fiscal year ending August 31, 1954, signed by petitioner husband as president or other *331 principal officer and by petitioner wife as treasurer, assistant treasurer, or chief accounting officer, which return was largely blank and recited "no activity." Its return for its fiscal year ending August 31, 1955, was signed by petitioner husband as president, showed gross receipts of almost $14,000, but a net loss of a little over $11,000 after deducting depreciation of over $14,600. Such return showed the following depreciation schedule: Schedule I - Depreciation
Item
Acquired
Cost
Rate
Prior
Current
Total
Cables and
9-10-55
$41,509.82
33 1/3
0
$13,836.61
$13,836.61
Equipment
Truck
9-10-55
1,386.23
33 1/3
0
462.07
462.07
Office Furniture
9-10-55
290.84
10
0
29.08
29.08
Tower
9-10-55
2,224.13
10
0
222.41
222.41
Concrete Block
9-10-55
856.96
10
0
85.70
85.70
Building
Totals
$46,267.98
$14,635.87
$14,635.87
And the following balance sheet: Schedule L - Balance Sheet
End of Taxable Year
(First Year of Operations)
ASSETS
Cash
$ 921.54
Advances to Employees
132.19
Depreciable Assets
$46,267.98
Less Reserve for De-
preciation
14,635.87
31,632.11
Total
$32,685.84
LIABILITIES
Notes Payable
$38,788.31
Employees Withheld Taxes
145.50
Federal Excise Tax Payable
674.03
Common Capital Stock
4,331.65
Earned Surplus (Deficit)
(11,253.65)
Total
$32,685.84
*332 Petitioner husband testified generally that the antenna system business was satisfactory in 1954 and that "on through 1954 there was no trouble on the part of Tele-Ception to meet * * * [the $1,500 monthly] * * * payments," on its note which he had sold to Goldberg. He testified further that at "about this time" two or three UHF television stations were constructed in Knoxville, Tennessee, which is approximately 40 miles from Middlesboro and that quite unexpectedly a good signal from these stations was received in Middlesboro with the result that the television antenna system was no longer in demand and the business of Tele-Ception, Inc., decreased. He testified further that he personally made two of the $1,500 monthly payments on the corporation's note to Goldberg in 1955, one of such payments being for the month of February 1955. In about December 1955 Goldberg brought suit (apparently against the corporation) to enforce payment of the note. On November 4, 1955, petitioners sold a brick business building in Paintsville, Kentucky, which they had owned since 1943 and on which sale they realized a substantial long-term capital gain. Petitioner husband testified that the building *333 would not have been sold and the gain realized "but for the fact that * * * [he] needed that money for the purpose of paying the obligations of the corporation which had by inadvertence on the part of anyone become absolutely worthless, * * *." At sometime during 1955 petitioner husband offered to pay Goldberg $10,000 and to transfer to Goldberg absolutely petitioners' 50 percent of the stock of Tele-Ception, Inc., (which Goldberg was then holding as collateral security for the payment of that corporation's note) in return for petitioners' release from liability on such note. This offer was refused. It is stipulated that Tele-Ception, Inc., continued to supply service to its subscribers and to receive income therefrom during the entire calendar year 1955 and during the first 6 months of 1956. Petitioner husband probably resigned as principal officer of Tele-Ception, Inc., in about July 1956. There is no evidence of record indicating that said corporation was ever liquidated or dissolved. On their joint income tax return for 1955 petitioners claimed as a capital loss "Loss on stock & note - Teleception of Middlesboro (Worthless in 1955) ($29,034.25)" which claimed loss was *334 disallowed by the statutory deficiency notice. By their petition the petitioners have failed to raise the issue of loss due to the worthlessness of a nonbusiness bad debt, have contested only respondent's disallowance of the claimed capital loss on the stock of Tele-Ception, Inc., and there has been no motion to conform pleadings to proof. We reject respondent's arguments based on this circumstance, however, for it is obvious that in this case identical factors will control the allowance of the claimed loss whether it be considered a loss due to the worthlessness of the debt in 1955 or a loss due to the worthlessness in that year of corporate stock of Tele-Ception, Inc. United States v. White Dental Co., 274 U.S. 398. Respondent raises the further argument that petitioners have failed to prove that they had a basis for their stock of Tele-Ception, Inc., which argument we have found to be unnecessary of resolution. Section 165 of the Internal Revenue Code of 1954 provides in pertinent part: (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year * * *
(g) Worthless Securities. - (1) General *335 Rule. - If any security * * * becomes worthless during the taxable year * * *. (2) Security Defined. - For purposes of this subsection, the term "security" means - (A) a share of stock in a corporation; * * * Section 166 of the Internal Revenue Code of 1954 provides in pertinent part: Bad Debts. * * * (d) Nonbusiness Debts. - (1) General Rule. - In the case of a taxpayer other than a corporation - * * *
(B) where any nonbusiness debt becomes worthless within the taxable year, * * * Pertinent regulations are as follows: Section 1.165-5(f) Decline in market value. A taxpayer possessing a security to which this section relates shall not be allowed any deduction under section 165(a) on account of mere market fluctuation in the value of such security. * * * and section 1.166-5(2) provides: * * * A loss on a nonbusiness debt shall be treated as sustained only if and when the debt has become totally worthless, and no deduction shall be allowed for a nonbusiness debt which is recoverable in part during the taxable year. It is obvious that the questions of whether the stock of Tele-Ception, Inc., became worthless during 1955, and whether the *336 debt obligation of that company became worthless in that same year are questions of fact and that the burden of proof on each of these questions lies on petitioners. The record evidence in this case is meager. Without enumerating the many points where it seems that petitioners could have produced corroborating witnesses or records or documents, we observe only that they were content to rely almost wholly on unsupported statements of conclusion made by petitioner husband while he was on the witness stand. Petitioners' principal arguments in support of their positions of worthlessness during 1955 are that because of such worthlessness, they "took" a long-term capital gain during that year and that they offered Goldberg $10,000 to take their stock in Tele-Ception, Inc., during that year. The first argument is conclusory, subjective and of little merit in our view. The second argument is distorted, for the $10,000 offer included a condition that Goldberg release petitioners from their remaining obligation on their guarantee of the corporate note and was therefore in reality an offer to compromise a potential obligation of about $38,000 or $39,000 by payment of $10,000. Some of *337 the factors which have influenced our decision in this case are that the corporation continued its operations through 1955 and the first 6 months of 1956. The only balance sheet of the corporation which we have shows that by the end of August 1955 the corporation valued its stock at over $4,000; that it had gross assets of over $46,000 and had had gross receipts for its fiscal year ending in 1955 of almost $14,000. Its operating deficit for such year of over $11,000 reflected current depreciation of over $14,000. Also, by the end of August 1955 the corporation's note (held by Goldberg and guaranteed by petitioners) had been reduced from $45,888.31 to $38,788.31 [1] and on September 10, 1955, the corporation acquired depreciable assets at a claimed cost of over $46,000. Petitioners have favored us with no further evidences of details of operation or finances of the corporation for the balance of 1955 or thereafter. It may be that the record in this case would support a conclusion that there had been a fluctuation downward in the value *338 of Tele-Ception, Inc.'s stock and of its debt obligation, but a showing of mere fluctuation in value does not satisfy petitioners' burden of showing worthlessness. United States v. White Dental Co., supra. Considering the entire record we must conclude that petitioners have utterly failed their burdens. Decision will be entered for the respondent. Footnotes
1. A net reduction of only $4,100, since the corporation now owed petitioners the $3,000 which they had paid on this note under their guarantee.↩